# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER PADILLA,

     Plaintiff,

vs.                                                 No. CIV 16-0559 JB/KBM

AMERICAN MODERN HOME
INSURANCE COMPANY,
GOVERNMENT EMPLOYEES
INSURANCE COMPANY, DON BROWN
INSURANCE AND PROPERTIES,
INC., and DONALD G. BROWN,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Remand, filed July 13, 2016 (Doc. 9)("Motion"). The Court held a hearing on January 20, 2017. The primary issues are: (i) whether 28 U.S.C. § 1446 requires defendants to join in or consent to removal of an action within thirty days after they receive a copy of the initial pleading; and (ii) whether the Plaintiff Christopher Padilla fraudulently joined two of the Defendants in order to defeat federal diversity jurisdiction. The Court concludes that, while all defendants must join in or consent to removal, they need not do so within thirty days after they receive a copy of the initial pleading. The Court also concludes that the Plaintiff did not fraudulently join the non-diverse Defendants, so the Court will grant the Motion and remand the case.

## <u>FACTUAL BACKGROUND</u>

To provide context, the Court takes its recitation of the facts from Padilla's Complaint for Breach of Contract and Insurance Bad Faith, filed April, 26, 2016, in <u>Padilla v. American Modern Home Ins. Co.</u>, D-202-CV-2016-02675 (Second Judicial District Court, County of

Bernalillo, State of New Mexico), in file at July 10, 2016 (Dec. 1-1)("Complaint"). The Court relies on this factual account for background purposes only, and it recognizes that the Complaint's factual account is largely Padilla's version of events. The Court also takes undisputed facts from the Notice of Removal, filed June 10, 2016 (Doc. 1)("Notice of Removal").

Padilla is a resident of Bernalillo County, New Mexico. Complaint ¶ 2, at 2. Defendant American Modern Home Insurance Company ("American Home") is incorporated in Ohio, and it has its principle place of business in Ohio. Notice of Removal, ¶ 8, at 2. Defendant Government Employees Insurance Company ("GEICO") is incorporated in Maryland, and it has its principal place of business in Maryland. Notice of Removal, ¶ 11, at 2. Defendant Don Brown Insurance and Properties, Inc. ("Brown Insurance") is a New Mexico corporation, and it has its principal place of business in Bernalillo County. Complaint ¶ 5, at 2. Defendant Donald G. Brown is a resident of Bernalillo County. See Complaint ¶ 6, at 2.

Padilla owned a 1971 Chevrolet pickup truck that two distinct insurance policies covered. See Complaint ¶¶ 10-13, at 3. American Home issued Padilla a policy covering three collector vehicles, including the 1971 Chevrolet pickup truck. See Complaint ¶ 11, at 3. An insurance policy that GEICO sold to Padilla also covered Padilla's truck, and that policy included uninsured motorist ("UM") coverage. Complaint ¶ 13, at 3. GEICO sold the policy to Padilla through Brown Insurance, which Brown operated and managed. See Complaint ¶ 14, at 3. GEICO and Brown Insurance told Padilla that his insurance policy's UM coverage would "protect[] him from damages sustained by an uninsured or underinsured motorist." Complaint ¶ 15, at 3-4.

In February, 2013, as part of the maintenance and repair process for a ruptured fuel line, Padilla parked his truck in his driveway "for safety reasons." Complaint ¶ 17, at 4. Someone stole Padilla's truck on February 8, 2013. See Complaint ¶ 18, at 4. A few days later, Padilla's truck was found burning, and it was a total loss. See Complaint ¶ 19, at 4. The thief remains unidentified. See Complaint ¶ 19, at 4. Padilla filed an insurance claim with American Home. See Complaint ¶ 20, at 4. On February 12, 2013, American Home denied the claim, because a provision of Padilla's American Home policy restricts its coverage to damage that occurs while the vehicle is stored in a locked garage facility. See Complaint ¶ 21, at 4-5. That coverage restriction applies, however, only when a vehicle is not being used for "'Occasional Pleasure Use,'" meaning "'activities consistent with and related to participation in vehicle exhibitions, vehicle club activities, parades, leisure/pleasure drives, or maintenance.'" Complaint ¶ 22, at 5 (quoting Padilla's American Home policy).

Padilla also filed a claim for UM coverage both with American Home and with GEICO, because, "once the [truck] was taken unlawfully, it was operated without permission by an unknown individual, and thus the driver was an uninsured motorist who caused damage to Mr. Padilla's property (*i.e.,* the pickup)." Complaint ¶ 24, at 5-6. American Home denied Padilla's UM claim in February, 2014, and it asserted that Padilla had rejected UM coverage when purchasing his American Home policy. See Complaint ¶ 26, at 5. Padilla disputes that assertion and says that he "never signed a rejection of [UM] limits." Complaint ¶ 27, at 6.

GEICO also denied Padilla's UM claim, although it acknowledged that Padilla's policy contained UM coverage, because, under GEICO's understanding of New Mexico law, UM coverage does not apply to Padilla's loss. See Complaint ¶ 28, at 6-7. Padilla disagrees with GEICO's understanding of New Mexico law. See Complaint ¶ 34, at 7-8.

## PROCEDURAL BACKGROUND

On April 26, 2016, Padilla filed his Complaint in "[t]he Second Judicial District Court, County of Bernalillo, State of New Mexico." Notice of Removal ¶ 2, at 1. On May 2, 2016, Padilla served notice on Brown Insurance and Brown. See Motion at 1-2. On May 11, 2016, both American Home and GEICO received service. See Motion at 2-3. On June 10, 2016, GEICO removed the case to federal court. See Notice of Removal at 8. The Notice of Removal alleges that Brown Insurance and Brown consented to removal. See Notice of Removal ¶ 35, at 6. On June 17, 2016, American Home filed a separate Notice of Consent to Removal, filed June 17, 2016 (Doc. 4)("Notice of Consent to Removal").

### 1.     The Notice of Removal.

GEICO removed the case "on the basis of diversity jurisdiction." Notice of Removal ¶ 36, at 7. According to GEICO, "diversity of citizenship is present in this matter as [Brown Insurance's and Brown's] citizenship does not defeat diversity," Notice of Removal ¶ 29, at 5, because Padilla "does not have a viable claim against" Brown Insurance or Brown, so they "are improperly joined," Notice of Removal ¶ 27, at 5. As justification for its claim that Padilla has no viable claim against Brown Insurance or Brown, GEICO asserts that Padilla "had no contact with [Brown Insurance or Brown] prior to the date of loss of February 8, 2013." Notice of Removal ¶ 27, at 5.

### 2.     The Motion to Remand.

On July 13, 2016, Padilla moved to remand the case to state court on two grounds. First, Padilla argued that the case should be remanded, because "GEICO's removal notice is procedurally defective." Motion at 2. The Notice of Removal is procedurally defective, according to Padilla, because it does not allege that American Home consented to removal, and

because American Home's subsequent Notice of Consent -- filed more than thirty days after American Home received a copy of the Complaint -- was untimely. See Notice of Removal at 7-8. Second, Padilla argued that the case should be remanded on jurisdictional grounds, because Brown Insurance and Brown were not fraudulently joined, so "complete diversity does not exist here." Motion at 11. The joinder of Brown Insurance and Brown was not fraudulent, according to Padilla, because GEICO's assertion that Padilla "purchased the policy through the internet and had no contact with Donald G. Brown or Don Brown Insurance and Properties, Inc. prior to the February 8, 2013 date of loss," Notice of Removal ¶ 21, at 4, is factually incorrect, see Motion at 9-10. Padilla says that he obtained an insurance quote from GEICO's website, but he says that he later purchased the policy -- and paid his premium via credit card -- at Brown Insurance's office. See Motion at 10. Padilla swore to this version of events in an affidavit and attached it to his Motion, see Affidavit of Christopher R. Padilla ¶¶ 3-5, at 1-2 (dated July 12, 2016), filed July 13, 2016 (Doc. 9-1), and his Complaint accuses Brown Insurance and Brown of misrepresenting the policy that they sold to him in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-2 ("UPA"), see Complaint ¶¶ 69, 75, at 21, 23 ("When Defendants . . . sold their policies to Mr. Padilla, they represented to and assured Mr. Padilla that he would be provided the coverages described herein . . . .").

Additionally, Padilla "requests an award of attorneys' fees and costs incurred in responding to the Notice of Removal and obtaining a remand to State court, pursuant to 28 U.S.C. § 1447(c)." Motion at 11. Such an award is justified, Padilla contends, because "GEICO lacked an objectively reasonable basis for seeking removal." Motion at 11.

### 3. **The Responses.**

In response to the Motion, GEICO argues that the Notice of Removal is not procedurally defective, because American Home's Notice of Consent to Removal should be considered timely even though it was filed more than thirty days after American Home received a copy of the Complaint, because, "as it had not made an appearance or answered, American [Home] could not file its own joinder or consent prior to the 30-day deadline." Defendant Government Employees Insurance Company's Response in Opposition to Plaintiff's Motion to Remand at 6, filed July 27, 2016 (Doc. 15)("GEICO Response"). According to GEICO, "[a]pplication of the 30-day requirement as asserted by Plaintiff would work an injustice to any defendant that seeks to remove a multi-party lawsuit which is properly removable due to diversity jurisdiction." GEICO Response at 6. GEICO also asserts that remand is inappropriate, even if American Home's consent was not timely, because GEICO contends that its failure to obtain American Home's timely consent to removal is a de minimis procedural defect that can be cured by amending the Notice of Removal. See GEICO Response at 6-7.

GEICO says that Padilla fraudulently joined Brown Insurance and Brown, because its "records demonstrate that on November 10, 2012, Plaintiff purchased his policy online and finalized the purchase via a telephone call to a GEICO representative located in Dallas, Texas." GEICO Response at 2-3. GEICO acknowledges that the "Plaintiff has provided an affidavit purporting to establish that he purchased the policy at the Don Brown Insurance office," but GEICO maintains that "there are no records which support his contention." GEICO Response at 2-3. GEICO supports those factual claims by attaching to the GEICO Response an employee affidavit and a copy of its policy log records. See Affidavit of Ruben Garay ¶¶ 1-9, at 1-3 (dated

June 10, 2016), filed July 27, 2016 (Doc. 15-1); Policy Log Records at 1-13, filed July 27, 2016 (Doc. 15-1).

In addition to contesting Padilla's version of events, GEICO indicates that the "Plaintiff's Complaint asserts no causes of action against the Brown Defendants," and it contends that, "[w]hen no cause of action is alleged against a non-diverse defendant, fraudulent joinder is established." GEICO Response at 9-10.

American Home also filed a response to the Motion. <u>See</u> Defendants' Response to Plaintiff's Motion to Remand, filed August 2, 2016 (Doc. 16)("American Home Response"). American Home argues that removal was proper even though the Notice of Removal did not allege that American Home consented to removal, because "the removal statute, 28 U.S.C. § 1446, only speaks generally to the manner of removal" without detailed requirements regarding "how the other defendants should 'join in or consent to the removal.'" American Home Response at 3 (quoting 28 U.S.C. 1446(b)(2)(B)). American Home also observes that the United States Court of Appeals for the Tenth Circuit "has not stated what is necessary to satisfy the requirement that all defendants" join in or consent to removal. American Home Response at 3. Given that neither Congress nor the Tenth Circuit has established strict or specific requirements, American Modern "submits that filing a notice of removal can be effective even without concurrently filed statements of individual consent from each defendant. To hold otherwise would . . . create procedural hurdles that Congress did not intend and that provide pitfalls for all but the most experienced federal court litigants." American Home Response at 3. In the alternative, American Home urges that, "if this Court should find that the Notice of Removal is defective, GEICO should be allowed to file an Amended Notice of Removal, signed by all defense counsel to cure any deficiency." American Home Response at 4. American Home also

reiterates GEICO's argument that Brown Insurance and Brown were fraudulently joined, because the "Plaintiff's Complaint does not assert a claim against" Brown Insurance or Brown "under any theory." American Home Response at 8.

Brown Insurance and Brown also filed a pro forma response to the Motion in which they incorporate by reference "all arguments and authorities" in the GEICO Response and in the American Home Response. Defendant Don Brown Insurance and Properties, Inc., and Don Brown's First Joinder in Defendants American Home Insurance Company and Government Employees Insurance Company's Responses to Plaintiff's Motion to Remand, filed August 12, 2016 (Doc. 19).

### 4.    <u>The Reply</u>.

On August 22, 2016, Padilla filed a reply brief. <u>See</u> Brief in Support of Plaintiff's Motion to Remand, filed August 22, 2016 (Doc. 24)("Reply"). Padilla asserts that the 2011 amendments to 28 U.S.C. 1446 "codif[y] the unanimity rule and set forth strict timing requirements." Reply at 2. Padilla characterizes GEICO's argument -- that American Home did not need to consent to removal within thirty days of receiving the Complaint -- as an attempt to rewrite the statute, because "[t]he plain language of the statute does not say only those joined and served defendants who have answered or appeared must consent." Reply at 2. Padilla also argues that American Home could have consented to removal "prior to the statutory deadline," even though "it had not answered or appeared in state court," because "Congress did not include such prerequisite language and the strict construction of the Congressional language is required." Reply at 2.

Padilla also argues that treating the Notice of Removal's failure to allege that American Home consented to removal as a curable procedural defect "requires ignoring the statutory

requirements and is improper." Reply at 5-6. Padilla notes that the "Defendants rely heavily on pre-amendment caselaw" when arguing that the defect in GEICO's Notice of Removal is curable, but "[t]he problem for Defendants is that indeed Congress has amended the statute to include requirements that must be met strictly." Reply at 5.

In addition to arguing that the Notice of Removal is procedurally defective, Padilla attacks the evidence attached to the GEICO Response purporting to establish that Padilla fraudulently joined Brown Insurance and Brown. See Reply at 5-6. Padilla characterizes the Garay Aff. as "a conclusory statement" that "provides nothing to explain the basis for his assertions, provides no detail, etc." Reply at 6. As to GEICO's Policy Log Records that "purport[] to show a phone call to GEICO in Dallas," Padilla says that "the documentation does not show who allegedly placed the call. It is certainly a reasonable inference that the Brown defendants placed the call with Mr. Padilla right there in the agency's office." Reply at 6.

**5.** **The Hearing.**

The Court held a hearing on the Motion on January 20, 2017. See Draft Transcript of Motion Hearing held on January 20, 2017 ("Tr.").[1] At the beginning of the hearing, the Court indicated that it was troubled by attempts to "get around the requirement that [all Defendants] got to consent within 30 days," because the text of the removal statute "is fairly plain." Tr. at 3:4-7 (Court). The Court also indicated that it was inclined to grant the Motion for lack of subject-matter jurisdiction, because "there is enough evidence here that the Court shouldn't be deciding or assuming that Mr. Padilla didn't go to Brown and the Brown Agency to order the insurance policy." Tr. at 4:3-22 (Court).

_____

[1]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Padilla then argued that the removal statute "allows for removal or joinder in removal after the 30-day period" only "if there are later served defendants." Tr. 5:19-22 (Romero). Padilla emphasized that American Home did not consent to GEICO's Notice of Removal before the time to do so had lapsed. See Tr. at 10:3-12 (Romero, Court). Padilla also said that Brown Insurance and Brown signaled that they wished to litigate in state court instead of in federal court by timely filing their amended answer in state court rather than in federal court. See Tr. at 10:13-17 (Romero). Padilla later conceded, however, that "[w]e are not arguing that the Brown defendants did not timely consent . . . . We believe that they did advise GEICO of their consent." Tr. 10:21-24 (Romero).

The Court then asked GEICO for its perspective on the procedural issue, specifically how GEICO could justify ignoring the statute's plain language about the consent deadline. See Tr. at 14:11-14 (Court). GEICO referred the Court to its earlier decision in Thompson v. Intel Corporation, 2012 WL 3860748 (August 27, 2012)(Browning, J.), in which the Court addressed the most recent amendment to the removal statute's legislative history. See Tr. at 14:17-15:14 (Perry). Quoting from the House Report that the Court cites in a footnote in Thompson v. Intel Corporation, GEICO said that the 2011 amendment adds a new paragraph that "clarifies the rule of timeliness and provides for equal treatment of all defendants and their ability to obtain Federal jurisdiction over the case against them without undermining the Federal interest in ensuring that defendants act with reasonable promptness in invoking Federal jurisdiction." Tr. at 16:1-8 (Perry)(quoting H.R. Rep. No. 112-10 (2011)). GEICO argued that is vital to keep such legislative intent in mind, because § 1446's text "doesn't say [all defendants] must join in . . . thirty days." Tr. at 16:11-13 (Perry). Instead, GEICO said that the statute indicates that, "[i]f defendants are served at different times, and a later served defendant files a notice of removal,

any earlier served defendant may consent to the removal, even though the earliest served defendant did not purposely initiate or consent to removal." Tr. at 16:22-17:2 (Perry). Conspicuous by its absence, GEICO asserted, is any indication of a thirty-day window for consent. See Tr. at 17:3-4 (Perry). According to GEICO, the combination of text and legislative history indicates that defendants need only act with "reasonable promptness" when seeking to remove to federal court. Tr. at 17:4-7 (Perry). GEICO said that the one-business-day turnaround time from when it filed the Notice for Removal and American Home consented qualifies as reasonable promptness and, therefore, conformed to Congress' intent. See Tr. at 17:8-19:25 (Perry, Court).

American Home then offered its perspective on the procedural issue. See Tr. at 24:1-3 (Court, Hill). American Home insisted that it tried, unsuccessfully, to discover the identity of GEICO's counsel before GEICO filed the Notice of Removal. See Tr. at 25:3-20 (Hill). American Home maintained that, once the Notice of Removal's filing made GEICO's counsel's identity clear, it immediately filed its Notice of Consent to Removal. See Tr. at 25:20-22 (Hill). American Home protested, therefore, that it would be unfair and unjust to strictly apply a thirty-day deadline. See Tr. at 25:23-26:2 (Hill).

The Court then asked American Home how, in its opinion, the deadline rule should read. See Tr. at 26:3-4 (Court). American Home suggested that the rule should be read to require defendants to consent to a notice of removal within a reasonable time after they have identified all other defendants' counsel. See Tr. at 26:5-10 (Hill). The Court pushed back, noting that Congress had not written the rule that way. See Tr. at 26:12-13 (Court). American Home speculated that Congress did not write the rule in that way because Congress did not take into account: (i) the difficulties inherent in coordinating among many defendants -- especially when

one or more of those defendants is a corporation from outside the state; and (ii) New Mexico's idiosyncratic process of routing service on insurance companies through the Superintendent of Insurance. See Tr. at 26:14-21 (Hill).

Padilla then returned to the podium and conceded that he had not previously familiarized himself with the legislative history that GEICO introduced, but he cautioned that the Court is one of "very limited jurisdiction" that must strictly construe the removal rules. Tr. at 27:11-16 (Romero). Padilla then suggested that GEICO hoisted itself on its own petard by arguing that equal treatment ought to be a consideration in this case. See Tr. at 27:19-28:7 (Romero)(referencing Tr. at 20:6-14 (Perry)). According to Padilla, equal treatment to all defendant corporations demands that the consent deadline be strictly enforced; otherwise, the voice of those defendants who do not wish to consent to removal have their voices muted. See Tr. at 27:19-28:7 (Romero). Resisting any implication that the deadline could be relaxed, Padilla urged the Court to strictly apply the thirty-day window that he found in subsection (C). See Tr. at 28:8-29:15 (Romero, Court).

Addressing American Home's arguments, Padilla attacked the contention that American Home had been unable to identify GEICO's counsel before GEICO filed the Notice of Removal. See Tr. at 29:16-30:10 (Romero). According to Padilla, the New Mexico bar is small, and court dockets readily reveal dozens of cases against GEICO that the same even smaller collection of attorneys handled. See Tr. at 29:21-30:3 (Romero). Padilla asserted that it would not be very difficult to focus on, identify, and communicate with the counsel handling this specific case for GEICO. See Tr. at 30:2-10 (Romero). Prompted by the Court to say how it would write the consent deadline rule, Padilla extemporized that "a defendant can consent or remove within thirty days of, I'm adding actually to the language, Your Honor, but that's the way I'm reading

the rule or thinking of the rule. If they're within their right to remove within their thirty days, they can remove." Tr. at 32:22-33:2 (Romero). Enumerating some of the benefits that he saw to reading the rule this way, Padilla maintained that it: (i) prevents defendants who do not want to be removed from being removed; (ii) prevents state courts from losing jurisdiction incorrectly; and (iii) removes the lexical ambiguity that inheres to GEICO's preferred language of "within a reasonable time." Tr. at 33:10-19 (Romero).

The Court then turned its attention to the fraudulent joinder issue, and it asked Padilla what Brown Insurance and Brown did wrong that would permit naming them as Defendants in this case. See Tr. at 33:23-24 (Court). Padilla indicated that he believed Brown Insurance and Brown breached their contract with him, because Brown allegedly promised to obtain full UM coverage for Padilla and failed to do what he said he would do. See Tr. at 35:2-36:7 (Romero, Court). The Court noted -- and Padilla conceded -- that Padilla had received some UM coverage, even if it was not full coverage. See Tr. at 36:8-12 (Court, Romero). Padilla insisted, however, that he had wanted full coverage and not partial coverage. See Tr. at 36:16-37:1 (Romero, Court).

GEICO then took its turn at the podium to respond regarding the fraudulent joinder issue. See Tr. at 44:2-6 (Perry, Court). GEICO stated that Padilla pleads no viable claim against Brown Insurance and Brown. See Tr. at 44:7-9 (Perry). GEICO asserted that a breach-of-contract claim cannot apply to Brown Insurance or to Brown, because: (i) GEICO denied Padilla's insurance claim; (ii) Brown Insurance and Brown are not GEICO; and (iii) the breach-of-contract claim has to be brought against the company that sold the policy. See Tr. at 44:19-45:8 (Perry). The Court challenged GEICO on this position, observing that Padilla could have a viable claim against Brown Insurance and Brown for breach of contract if Padilla "walked in, for

example, and said [that he] wanted to buy insurance," and if Brown responded "you got it, we got it for you," but then Brown Insurance and Brown never bought a single policy. Tr. at 45:9-17 (Court). Furthermore, the Court highlighted that Brown Insurance and Brown receive a commission for providing customers with the GEICO policies that they purchase through him. See Tr. at 46:24-47:7 (Court, Perry). GEICO posited that the commission is immaterial, because a straight breach-of-contract claim requires that a contract exist between the parties, and Brown Insurance and Brown never entered into a contract with Padilla. See Tr. at 47:8-48:5 (Perry, Romero, Court).

Padilla chimed that his first claim in fact includes a breach-of-contract claim against Brown Insurance and Brown, based on Padilla's contract with them to procure the coverage with GEICO. See Tr. at 48:15-24 (Romero). GEICO scoffed at the idea that "there is a mysterious third contract that we've never seen, because it's not in writing," suggesting that -- at worst -- there might be a negligent misrepresentation claim or an agency claim to be had in the case of an oral contract, but that breach of contract requires an agreement in writing. Tr. at 48:25-50:6 (Perry, Court). The Court, not fully convinced, asked analogically whether breach of contract exists if someone walks into a store and buys a piece of wood but the owner does not give him or her the wood. See Tr. at 50:7-11 (Court). GEICO suggested that the analogy was imperfect, on the grounds that Brown and Brown were only agents who sold GEICO's contract, i.e., that Brown and Brown did not have their own policy to sell. See Tr. at 50:12-51:5 (Perry).

The Court then offered Brown Insurance and Brown an opportunity to speak to the merits question, asking them to focus why they believe that Padilla does not have a viable claim against them. See Tr. at 53:13 (Court). The Court expressed qualms about concluding that Brown Insurance and Brown could not have breached a contract with Padilla under any circumstances,

as GEICO suggested.  See Tr. at 53:16-19 (Court).  After all, the Court surmised, insurance brokers could "really do[] bad things to consumers if there isn't some law out there that says, when people walk in and [the brokers] don't purchase what they say they purchased," that the broker is liable for breach of contract.  Tr. at 53:19-24 (Court).  Brown Insurance and Brown explained that it did not believe that insurance brokers in general are immune from breach-of-contract suits, but they believed that Padilla does not prove a viable breach-of-contract claim against them in this particular instance.  See Tr. at 53:25-54:3 (Frase).  According to Brown Insurance and Brown, there was no consideration exchanged between Padilla, and Brown Insurance or Brown; they stated that even an insurance broker commission, if any, would arise out of the contractual relationship that GEICO has with Brown and Brown Insurance.  See Tr. at 54:3-15 (Frase).  Burrowing more deeply into this point, the Court suggested that it does not seem to matter from whence the broker commission comes insofar as the commission arises from Brown Insurance and Brown selling Padilla an insurance contract.  See Tr. at 54:16-24 (Court).  Brown Insurance and Brown indicated that they disputed that they even sold the GEICO policy to Padilla.  See Tr. 55:13-19 (Frase).

The Court asked Brown Insurance and Brown whether Brown would even be able to state under oath that Brown Insurance and Brown had not sold the insurance policy to Padilla.  See Tr. at 55:20-24 (Court).  Brown Insurance and Brown responded that it is likely that Brown will never be able to make such a statement under oath, because he (i) retired before the case was filed; (ii) gave away all his records; and (iii) has no direct interactions with Padilla.  See Tr. at 55:25-56:4 (Frase).  Brown Insurance and Brown acknowledged that, as a result, it was staking its defense primarily on GEICO's documentation.  See Tr. at 56:5-9 (Frase, Court).  Brown Insurance and Brown then conceded that they believe GEICO's and Padilla's conflicting

accounts of how Padilla purchased the GEICO policy could be reconcilable, at least for the purposes of the Motion.[2]  See Tr. at 56:10-13 (Court, Frase).

Padilla then took advantage of his opportunity to reply to further address his breach-of-contract claim against Brown Insurance and Brown.  See Tr. at 56:18-23 (Court, Romero).  Padilla asserted that there are "lots of different claims related to failing to procure coverage," including breach of contract.  Tr. at 57:4-18 (Romero, Court).  Padilla contended that Brown Insurance and Brown failed to obtain the unlimited UM coverage that Padilla requested, and that New Mexico requires under the Mandatory Financial Responsibility Act, N.M. Stat. Ann. §§ 66-5-201 to -239.  See Tr. at 57:25-58:9 (Romero).

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 (D.N.M. 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)).  As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N. R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of

---

[2]The Court proposed during the motion hearing one such way to reconcile the two accounts: "Let's say Mr. Padilla goes in [and sees] Mr. Brown.  They sat there at the computer. He handed him the credit card.  Mr. Brown communicated with somebody in Dallas with GEICO and ordered the insurance . . . ."  Tr. at 34:11-16 (Court).

the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956). The Court will discuss the two requirements in turn.

### 1.    Diversity of Citizenship.

For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)). A corporation, on the other hand, is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)); Thompson v. Intel Corp., 2012 WL 3860748, at *12 (D.N.M. 2012)(Browning, J.).

## 2. __Amount in Controversy.__

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18 (D.N.M. 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14AA Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Vikram D. Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, & Catherine T. Struve, Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then

exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955.

In McPhail v. Deere & Co., the Tenth Circuit relied on the United States Court of Appeals for the Seventh Circuit's decision in Meridian Securities Insurance Co. v. Sadowski, in which the Honorable Frank H. Easterbrook, United States Circuit Judge, explained how a removing defendant asserting diversity jurisdiction in the face of a silent complaint might proceed:

> [T]he removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover. We have suggested several ways in which this may be done -- by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the

controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant). Once the estimate has been made -- and contested factual allegations that support the estimate have been established in a hearing under Rule 12(b)(1) by admissible evidence . . . then . . . the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum.

Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d at 541-42 (citations omitted). The Tenth Circuit adopted the Seventh Circuit's reasoning, stating:

Meridian eliminates the double standard that would come from misunderstanding what "preponderance of the evidence" requires. The proponent of federal jurisdiction must prove contested facts; and because a defendant has no control over the complaint, he cannot put a large sum of money in controversy simply by demanding it, as a plaintiff often can. But once those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is "legally certain" that less than $75,000 is at stake.

McPhail v. Deere & Co., 529 F.3d at 954. Thus, a defendant removing a matter to federal court has met his or her burden in proving the amount-in-controversy requirement if the defendant has proved any contested facts regarding the amount-in-controversy, and the amount-in-controversy is not legally certain to be less than $75,000.00.

As the Court has previously explained, "[i]n the absence of an explicit demand for more than $75,000.00, the defendant must show how much is in controversy through other means." Salazar v. Geico Ins. Co., No. CIV 10-0118 JB/RLP, 2010 WL 2292930, at *3 (D.N.M. Apr. 27, 2010)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 955). The Tenth Circuit has identified the means upon which a defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint; (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward; and (iii) the defendant may

rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's own estimation of its claim is a proper means of supporting the allegations in the notice of removal. See Salazar v. Geico, 2010 WL 2292930, at *3 (citing McPhail v. Deere & Co., 529 F.3d at 956). In McPhail v. Deere & Co., the Tenth Circuit found that the defendant met its burden to support diversity jurisdiction where the plaintiff's complaint was silent on the amount in controversy. In its notice of removal, the defendant represented that the amount in controversy exceeded $75,000.00, and incorporated electronic-mail messages and letters of conversations between the parties' attorneys discussing the value of the claim. The defendant's counsel interpreted the conversation as meaning that the plaintiff was seeking more than $75,000.00, but the plaintiff's counsel refused to concede an amount in controversy in excess of $75,000.00, stating "it may very well be" that the amount in controversy would exceed $75,000.00. 529 F.3d at 957. The Tenth Circuit found that the background information provided enough supplementary information for the district court to conclude that it was not legally certain that the plaintiff would recover an amount less than $75,000.00. See 529 F.3d at 957. In so ruling, the Tenth Circuit gave the example of a case in which a defendant has allegedly breached a contract and the plaintiff seeks damages in an indeterminate amount. The Tenth Circuit suggested that "a defendant might support jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the notice of removal." 529 F.3d at 956.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. at 554. The district court should consider outside evidence and find by a

preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." <u>Dart Cherokee Basin Operating Co., LLP v. Owens</u>, 135 S. Ct. at 554.

## <u>LAW REGARDING REMOVAL AND REMAND</u>

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). <u>See</u> <u>Huffman v. Saul Holdings LP</u>, 194 F.3d 1072, 1076 (10th Cir. 1999)("'When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court.'")(quoting <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996)). In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the case in state court. <u>See</u> 28 U.S.C. § 1446(b)(2)(A). Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action,[3] and their consent

_____

[3]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party plaintiffs. The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants. As the Court wrote in <u>Wiatt v. State Farm Insurance Co.</u>,

> [w]ith respect to third-party defendants, courts take various views on whether they may remove cases. <u>See</u> <u>NCO Fin. Sys., Inc. v. Yari</u>, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing <u>Monmouth-Ocean Collection Serv., Inc. v. Klor</u>, 46 F. Supp. 2d 385 (D.N.J. 1999)). 28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants." The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a). <u>See</u> <u>First Nat. Bank of Pulaski v. Curry</u>, 301 F.3d 456, 461-62 (6th Cir. 2002); James Wm. Moore, <u>Moore's Federal Practice</u> § 107.11[1][b][iv] ("[T]hird-party

is not required for removal if all the true defendants consent.  See Hamilton v. Aetna Life & Cas.

<div style="margin-left:2em">

defendants are not *defendants* within the meaning of the removal statute."
(emphasis in original)).  Other justifications for opposing third-party defendant
removal are that it would force a plaintiff to litigate in a federal court that he did
not choose and to which his adversary originally could not have removed, and that
allowing removal would expand jurisdiction of federal courts in contravention of
the strictly construed statutory limits on the right to removal.  See NCO Fin. Sys.,
Inc. v. Yari, 422 F. Supp. 2d at 1239.  Proponents of third-party removal,
however, assert that the term "defendant" under § 1441(a) does not necessarily
exclude third-party defendants, who, like other defendants, have been brought
into court involuntarily and may have an interest in having a federal forum.

. . . .

Sister districts within the United States Court of Appeals for the Tenth
Circuit have routinely held that third-party defendants that a defendant/third-party
plaintiff impleads may not remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422
F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. CIV 92-4104, 1992
WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); Radio Shack Franchise Dep't v.
Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716
F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim).  These cases, however,
involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-
defendant impleading the third-party defendant under Rule 14(b).  Arguably,
some of the rationales for opposing third-party defendant removal may not apply
where the plaintiff impleads a third-party defendant, because the plaintiff is the
party permissively joining the third-party defendant, and in this scenario, the
third-party defendant is more like a traditional defendant -- a party antagonistic to
the plaintiff.  See Moore, supra, § 107.11 [1][b][iv] ("The better view . . . is that
third-party claims are not removable, because only a party defending against
claims asserted by a plaintiff ought to be able to remove.").  At least one court,
however, has held that a third-party defendant a plaintiff/counter-defendant
impleads cannot remove, because the third-party defendant is not a defendant
within the meaning of § 1441.  See Garnas v. Am. Farm Equip. Co., 502 F. Supp.
349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-
party removal.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240.  It is
therefore an open question in this circuit whether a third-party defendant, who the
plaintiff impleaded, may remove a case.

</div>

560 F. Supp. 2d 1068, 1076 (D.N.M. 2007)(Browning, J.)(citations omitted).  The Court
ultimately concluded that it "need not resolve this issue, because assuming, without deciding,
that a third-party defendant impleaded under rule 14(b) may attempt removal, Allstate has not
met its burden to establish the Court's diversity jurisdiction over the claims against it."  560
F. Supp. 2d at 1078.

Co., 5 F.3d 642 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.). "A plaintiff objecting to the removal may file a motion asking the district court to remand the case to state court." Huffman v. Saul Holdings LP, 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. at 69).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied. Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332(a); Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1107 (10th Cir. 2000). Diversity between the parties must be complete. See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004). In addition to the requirements of original jurisdiction, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought. Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)("[W]e note that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that '[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" (alteration in original)(quoting 28 U.S.C. § 1441(b)(2))). The Tenth Circuit has noted

> that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)(alterations in

original)(quoting 28 U.S.C. § 1441(b)(2))).[4]  The forum-defendant rule applies to cases removed

under only diversity jurisdiction; a defendant may remove a case brought against it in its home

state on the basis of federal-question jurisdiction.  See 28 U.S.C. § 1441(b).  Last, a case cannot

be removed if it began with a nondiverse party or a forum-citizen defendant, and only later came

to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed

the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir.

1979);[5]  Flores-Duenas v. Briones, 2013 U.S. Dist. LEXIS 173620, at *12 n.6, *26 (D.N.M.

---

[4]Brazell v. Waite is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Court of Appeals for the Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Brazell v. Waite, 525 F. App'x 878 (10th Cir. 2013)(unpublished), Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775 (10th Cir. 2005)(unpublished), Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496 (10th Cir. 2010)(unpublished), Jenkins v. MTGLQ Investors, 218 F. App'x. 719 (10th Cir. 2007)(unpublished), Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished), Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911 (10th Cir. 2006)(unpublished), and Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(table decision), all have persuasive value with respect to a material issue and will assist the Court in its disposition of this Memorandum Opinion and Order.

[5]In DeBry v. Transamerica Corp., the Court of Appeals for the Tenth Circuit explained:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff. The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

601 F.2d at 488 (citation omitted).

2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule); or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined.

1.     **The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *4 (D.N.M. 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").  The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."  McPhail v. Deere & Co., 529 F.3d at 953.  See Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  See also McPhail v. Deere & Co., 529 F.3d at 955 ("It would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional facts . . . .").  Because federal courts are courts of limited jurisdiction, the Court of Appeals for the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014).  This strict construction and presumption against removal should not, however, be interpreted as hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *2 ("Strict construction does not mean judicial hostility toward removal. Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the

name of strict construction.")(citing Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *12).

## 2.    **The Procedural Requirements of Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *5. A removal that does not comply with the express statutory requirements is defective and must be remanded to state court. See Huffman v. Saul Holdings LP, 194 F.3d at 1077. See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United State Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction. See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b). The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[6]

---

[6]In 2011, Congress clarified removal jurisdiction and procedures in the Federal Courts

Jurisdiction and Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011).  See Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5.

On December 7, 2011, President Obama signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which is intended to clarify the operation of federal jurisdictional statutes and facilitate the identification of the appropriate state or federal courts in which actions should be brought [see Pub. L. No. 112-63, 125 Stat. 758 (2011)].

. . . .

Section 103 of the Act makes several changes to removal and remand procedures. 28 U.S.C. § 1446 is amended to cover removal procedures for civil cases only; provisions governing removal of criminal prosecutions have been moved into new 28 U.S.C. § 1455 [Pub. L. No. 112-63, § 103(b), (c), 125 Stat. 758 (2011)].

Section 103 of the Act also amends 28 U.S.C. § 1441(c) to provide that, on the removal of any civil action with both removable claims and nonremovable claims (i.e., those outside of the original or supplemental jurisdiction of the district court), the district court must sever all nonremovable claims and remand them to the state court from which the action was removed.  The amendment also provides that only defendants against whom a removable claim has been asserted need to join in or consent to removal of the action.  [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].

Section 103 also amends 28 U.S.C. § 1446(b) to provide that, in a multi-defendant case, each defendant will have 30 days from his or her own date of service (or receipt of initial pleading) to seek removal.  Earlier-served defendants may join in or consent to removal by a later-served defendant.  [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].  These provisions are intended to resolve a circuit split over when the 30-day removal period begins to run in cases in which not all defendants are served at the same time [see H.R. Rep. No. 112-10, at 13-14 (2011); see, e.g., Bailey v. Janssen Pharm., Inc., 536 F.3d 1202 (11th Cir. 2008)(30-day period runs from date of service on last-served defendant, and earlier-served defendants may join in last-served defendant's timely removal); Marano Enters. v. Z-Teca Rests., LP, 254 F.3d 753 (8th Cir. 2011)(each defendant has 30 days to effect removal, regardless of when or if other defendants have sought to remove); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254 (5th Cir. 1988)(first-served defendant and all then-served defendants must join in notice of removal within 30 days after service on first-served defendant)].

Section 103 also enacts a new subdivision (c) of 28 U.S.C. § 1446, containing provisions governing the procedures for removal.  These include new authorization for a notice of removal in a diversity case to assert the amount in controversy if the initial pleading seeks (1) nonmonetary relief, or (2) a money

"When a civil action is removed solely under section 1441(a), [the standard removal statute, which excludes multiparty, multiforum jurisdiction,] all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The failure of all defendants to consent to removal will result in remand.  The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20.  The defendants who have not been served, however, need not join in removal.  See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

**3.      Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  See 519 U.S. at 70-78.  Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court."  Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished).  In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed, on appeal, defects in the notice of removal, including

---

judgment when state practice either does not permit a demand for a specific sum or permits the recovery of damages in excess of the amount demanded.  Also part of a new subdivision (c) of 28 U.S.C. § 1446 is a provision allowing removal of a case based on diversity of citizenship more than one year after commencement of the action if the district court finds that the plaintiff acted in bad faith in order to prevent a defendant from removing the action (such as by deliberately failing to disclose the amount in controversy) [Pub. L. No. 112-63, § 103(b), 125 Stat. 758 (2011)].

Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5 (quoting 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107SA-1 to 107SA-2 (3d ed. 2013)).

that the notice of removal failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit nevertheless permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968). The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship. See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301. In McEntire v. Kmart Corp., when faced

with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements." 2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 300-02). Further, in Thompson v. Intel Corp., the Court permitted the defendant, Intel Corp., to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met. See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 C. Wright & A. Miller, Federal Practice and Procedure § 3733, at 651-659 (4th ed. 2009)(footnotes omitted). Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013). Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its notice of removal, if necessary, to fully allege facts that satisfy diversity jurisdiction's requirements by a preponderance of the evidence. See Carrillo v. MCS Indus., Inc., 2012 WL 5378300, at *14

(D.N.M. 2012)(Browning, J.)(permitting party to amend its notice of removal when the removing party did "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provides greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal"). Cf. New Mexico ex rel. Balderas v. Valley Meat Co., 2015 WL 3544288, at *25 (D.N.M. 2015)(Browning, J.)(denying amendment when it sought to assert a new jurisdictional basis that was not raised in the notice of removal).

As the Court has observed on an earlier occasion, amending a notice of removal so that it alleges jurisdictional facts is somewhat similar to considering post-removal evidence regarding subject-matter jurisdiction:

> Various courts have analogized amendment of notice of removals to consideration of post-removal evidence. The Supreme Court has held that, although certain material that appeared "in petitioners' affidavits in support of their motion for summary judgment" should have appeared in the notice of removal, it was proper to treat the notice of removal as if it had been amended to contain the relevant information contained in later-filed documents. Willingham v. Morgan, 395 U.S. 402, 408 n. 3 (1969)("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits."). Other circuit courts of appeal have also noted the similarity between permitting amendment of a notice of removal and considering post-removal evidence. The Eleventh Circuit held, in Lowery v. Alabama Power Co., 483 F.3d 1184 (11th Cir.2007), that, although the "district court has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents," a defendant "may effectively amend a defective notice of removal upon receipt of additional evidence that supplements the earlier-filed notice." 483 F.3d at 1214–15 & n. 66. The Eleventh Circuit then stated that "such a situation might arise where, after filing an insufficient notice of removal but before remand is ordered, the defendant receives a paper from the plaintiff that would itself provide sufficient grounds for removal." Lowery v. Ala. Power Co., 483 F.3d at 1215 n. 66.

Thompson v. Intel Corp., 2012 WL 3860748, at *12 (D.N.M. 2012)(Browning, J.).

**4.      Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the

absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., 2013 U.S. Dist. LEXIS 156746, at *14-17 (D.N.M. 2013)(Browning, J.). A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule. "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d 1208, 1214 (D.N.M. 2011)(Browning, J.)(quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Pubs., Inc., 329 F.2d at 85 (citations omitted). "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *3 (D.N.M. 2006)(Vazquez, J.). The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914). The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof. See <u>Montano v. Allstate</u> <u>Indemnity Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(table decision)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." <u>Couch v. Astec Indus., Inc.</u>, 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." <u>Smoot v. Chi., Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882.

Actual fraud -- <u>e.g.</u>, a plaintiff colluding with a nondiverse defendant to defeat removal[7] -- suffices to establish fraudulent joinder, but it is not required. See <u>McLeod v. Cities Serv. Gas</u> <u>Co.</u>, 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In <u>Smoot v.</u> <u>Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." 378 F.2d at 882 (quoting <u>Dodd v. Fawcett Pubs.,</u> <u>Inc.</u>, 329 F.2d at 85. In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit

_____

[7]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, <u>see</u> 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882. In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the plaintiff died when his car collided with a freight train. See 378 F.2d at 881. The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. See 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit. In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alterations in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted). The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits

determination that, absent fraudulent joinder, should be left to the state court where the action commenced." Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2. The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." 977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof. The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)). The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d

213, 217 (5th Cir. 1995)). The Griggs opinion later restates that test as follows --

> Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court.

181 F.3d at 699 (emphasis added). Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the absence of any possibility that the opposing party has stated a claim under state law." 16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added). It then comments: "The ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in original). The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp. 2d 1117 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined. 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5). The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing

> fraudulent joinder claims. See Allen v. Allstate Ins. Co., 2008 U.S. Dist. LEXIS
> 108948 (D.N.M. 2008)(Browning, J.)(holding that the claims asserted against the
> non-diverse defendant were "possibly viable under New Mexico law, and . . .
> sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist.
> LEXIS 95317, at *11 (stating that "[r]emand is required if any one of the claims
> against [the defendant] is possibly viable"); Provencio v. Mendez, 2005 U.S. Dist.
> LEXIS 39012, at *25 (D.N.M. 2005)(Browning, J.)(stating that "there must be no
> possibility the [p]laintiffs have a claim against [the non-diverse defendant]");
> Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal
> jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to
> relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the
> language of the United States Court of Appeals for the Eleventh Circuit, which
> states that "if there is even a possibility that a state court would find that the
> complaint states a cause of action against any one of the resident defendants, the
> federal court must find that the joinder was proper and remand the case to the
> state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs
> v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in
> original).

Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp. 2d at 1129.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 525 F. App'x. at 881 (citing Dodd v. Fawcett Pubs., Inc., 329 F.2d at 85; Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d at 988 (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal

nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank.  See

733 F.3d at 983. The defendants removed the case to federal court and alleged that the plaintiffs

fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The district court agreed that the

plaintiffs had been fraudulently joined, concluding that, under Utah law, "an attorney cannot be

held liable to a non-client absent fraud, collusion or privity of contract."  733 F.3d at 988.  The

Tenth Circuit disagreed with that characterization of Utah law, finding instead that, in the case

on which the defendants relied, the Supreme Court of Utah "has simply limited the

circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of

the provision of legal services."  733 F.3d at 988.  In rejecting the assertion of fraudulent joinder,

the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson
> and his law firm. Or even that Matheson and his law firm are not somehow
> fraudulently joined.  But the defendants needed to clear a high hurdle to prove
> something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder,

except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, Cuevas v. BAC

Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the

Smallwood v. Illinois Central Railroad Co. case.  See Dutcher v. Matheson, 733 F.3d at 988

(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).  In Cuevas v. BAC Home

Loans Servicing, LP, the Fifth Circuit states:

> Under the second way, the test is "whether the defendant has demonstrated that
> there is no possibility of recovery by the plaintiff against an in-state defendant,
> which stated differently means that there is no reasonable basis for the district
> court to predict that the plaintiff might be able to recover against an instate
> defendant." [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no
> reasonable basis of recovery, then the court can conclude that the plaintiff's
> decision to join the in-state defendant was indeed improper, unless that showing

> compels the dismissal of all defendants. There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants. Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations and internal quotation marks omitted). The Court indicated its adoption of that statement:

> Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, it is likely that it would approve this additional explanation of the fraudulent joinder standard. The Court will accordingly use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will obtain a judgment against an in-state defendant.

Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d 1225, 1255 (D.N.M. 2014)(Browning, J.). Cf. Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined). No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate. See, e.g., United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence.")(citations omitted).

A district court's order to remand based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit. See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order). The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry. See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

## LAW REGARDING THE UPA

"The UPA provides individual and class action remedies for unfair, deceptive, or unconscionable trade practices." Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507, 2012 WL 1132414, at *19 (D.N.M. Mar. 31, 2012)(Browning, J.)(citing Quynh Truong v. Allstate Ins. Co., 2010-NMSC-009, ¶ 22, 227 P.3d 73, 80 (2010)). "Generally speaking, the UPA is designed to provide a remedy against misleading identification and false or deceptive advertising." Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 22, 166 P.3d 1091, 1096 (N.M. Ct. App. 2007). To state a claim under the UPA, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 5 (citing N.M. Stat. Ann. § 57-12-2(D)); Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 12, 811 P.2d 1308, 1311 (N.M. 1991)). "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." Diversey Corp. v. Chem-Source Corp., 199-NMCA-112, ¶ 17, 965 P.2d 332, 338 (N.M. Ct. App. 1998).

Under the UPA, "[a]ny person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a[n] . . . [unfair practice] . . . may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater." N.M. Stat. Ann. § 57-12-10B. The UPA authorizes two private remedies. First, under § 57-12-10(A),

> [a] person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.

Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required.

N.M. Stat. Ann. § 57-12-10(A). Second, under § 57-12-10(B),

[a]ny person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

N.M. Stat. Ann. § 57-12-10(B). The first remedy under the statute -- injunctive relief -- expressly is not conditioned upon proof of monetary loss. See N.M. Stat. Ann. § 57-12-10(A). Instead, any person likely to be damaged by an unfair or deceptive trade practice of another may obtain such relief; monetary loss is "not required." N.M. Stat. Ann. § 57-12-10(A).

If the trier of fact finds that the violation of the UPA was committed willfully, the court may award up to three times the actual damages to the injured party. See N.M. Stat. Ann. § 57-12-10(B). The UPA does not mention claims for punitive damages. See N.M. Stat. Ann. § 57-12-10. The relief that the UPA provides is in addition to remedies otherwise available for the same conduct under the common law or other New Mexico statutes. See N.M. Stat. Ann. § 57-12-10(D).

## ANALYSIS

The Court concludes that there is no statutory thirty-day time limit for Defendants to join in or consent to removal, so American Home's Notice of Consent to Removal was timely. Consequently, the Defendants satisfy the statutory requirement that "all defendants who have been properly joined and served must join in or consent to the removal of the action" such that the Notice of Removal is not procedurally defective. 28 U.S.C. § 1446(b)(2)(A). The Court also

concludes, however, that Padilla did not fraudulently join Brown Insurance and Brown.  Because Brown Insurance's and Brown's presence in the present action destroys complete diversity of citizenship, the Court lacks subject-matter jurisdiction.  Consequently, the Court will grant the Motion.  The Court will not provide an award of attorney's fees and costs to Padilla, however, because GEICO had an objectively reasonable basis to remove the case.

I. **THE NOTICE OF REMOVAL IS NOT PROCEDURALLY DEFECTIVE, BECAUSE NO STATUTORY TIME LIMIT RESTRICTS DEFENDANTS' ABILITY TO CONSENT TO REMOVAL.**

Although Padilla is eloquent regarding the need to apply plain statutory language, see Reply at 3-4, he seeks to apply a time limit that can be found nowhere in the removal statute's plain statutory language.  The removal statute indicates that a defendant must file a notice of removal within "30 days after receipt by or service on that defendant of the initial pleading or summons," or not at all.  28 U.S.C. § 1446(b)(2)(B).  No such time limit applies to the statutory requirement that "all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The statute requires only that all defendants consent to removal; it is silent regarding when that consent must take place.  See Griffioen v. Cedar Rapids and Iowa City Ry. Co., 785 F.3d 1182, 1187 (8th Cir. 2015)(Wollman, J.)("The 2011 amendments to § 1446 that codified the rule of unanimity did not describe the form of or time frame for consent when multiple defendants are involved.").[8]  That Congress

_____

[8]Congress added the statutory language requiring all defendants to join in or consent to removal when it enacted the Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758.  Courts, however, had read a similar requirement into the removal statute for over a century.  See Bonadeo v. Lujan, 2009 WL 1324119, at *5 (D.N.M. 2009)(Browning, J.)("The Supreme Court, in an early case interpreting the predecessor to 28 U.S.C. § 1441[,] construed the phrase 'may be removed by the defendant or defendants' to mean that, where there are multiple defendants, all must join in removal.")(citing Chicago, RI & P.R. Co. v. Martin, 178 U.S. 245, 246-49 (1900)).  That unanimity requirement imposed "an effective thirty-day deadline to consent to removal" in cases where all the defendants were served at the same time, "because the notice of removal must be filed within thirty days, and because all defendants must join it

chose to "lay[] out in detail the procedures for the notice of removal, including the form of the notice and the time frame for each defendant to file it," but chose not to "define[] with equal specificity the form of or time for consent," Griffioen v. Cedar Rapids and Iowa City Railway Co., 785 F.3d at 1187, bolsters the Court's conclusion that § 1446 does not require defendants to join in or consent to removal within thirty days after they receive a copy of the complaint.

Nevertheless, defendants face a de facto time limit for consent to removal, because "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c).[9] Defendants must either assert that they do not consent to removal within those thirty days or they are treated as if they had consented insofar as their lack of consent can no longer cause a court to remand the case. See Bank of America v. Lebreton, 2015 WL 2226266, at *31 (D.N.M. 2015)(Browning, J.)(holding that remand was not required even though the notice of removal's

_____

. . . ." Bonadeo v. Lujan, 2009 WL 1324119, at *14. When Congress codified the unanimity requirement, Congress chose not to codify that effective time limit. Congress went further, and severed the link between the unanimity and the notice-of-removal requirements that produced the thirty-day effective time limit by specifying that defendants must consent to "the removal of the action" not to the notice of removal itself. Consequently, older pronouncements stating that, "[i]f one defendant fails to consent within the thirty days, removal is destroyed because there is no unanimity," are no longer good law. Bonadeo v. Lujan, 2009 WL 1324119, at *14. See Tresco, Inc. v. Continental Cas. Co., 727 F. Supp. 2d 1243, 1248 (D.N.M. 2010)(Browning, J.)("Remand is required if all of the defendants fail to consent to the petition for removal within thirty days of being served."). The Court acknowledges that it has erroneously included that sort of language as dicta in its post-2011 opinions. See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196, 1225 (D.N.M. 2013)(Browning, J.); Hernandez v. Menlo Logistics, Inc., 2013 WL 5934411, at *26 (D.N.M. 2013)(Browning, J.).

[9]Congress adopted § 1447(c)'s time limit for raising non-jurisdictional defects in 1988. See Act of Nov. 19, 1988, Pub. L. No. 100-702, 102 Stat. 4669. That the cases originally articulating the unanimity rule predates those amendments may explain why the pre-2011 unanimity rule imposed a thirty-day time limit for defendants to join in removal. See supra note 8. Without such a time limit, defendants would have had no "definitive time limit by which they may remove, consent to remove, or withhold their consent to remove a case." Bonadeo v. Lujan, 2009 WL 1324119, at *15.

filing was untimely, because "[b]y not moving for remand, Bank of America waives its right to have the case remanded; the Court's jurisdiction is not implicated.").[10]

Even though there is no explicit time limit for a defendant to consent to removal, one might think that a defendant who fails to file a notice of removal within thirty days of receiving a complaint thereby demonstrates that they wish to litigate in state court such that they cannot later consent to removal to federal court. Before Congress codified the requirement that all defendants must consent to removal in the Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, "a considerable number of district courts" took that approach and "held that a failure of the first defendant served in the state court action to file a notice of removal with the district court within 30 days of service will prevent all subsequently served defendants from removing the action." 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3731 (4th ed. 2017). The Fifth Circuit also took this approach. See Getty Oil Corp. v. Insurance Co., 841 F.2d 1254, 1262-63 (5th Cir. 1988)(holding that a notice of removal must be filed within thirty days of service on the first defendant and that all defendants must join in the notice within that time period). The United States Court of Appeals for the Fourth Circuit also held that a notice of removal must be filed within thirty days of service on the first defendant, but it permitted later-served defendants a full thirty days "to join an otherwise valid removal petition." McKinney v. Bd. of Trs. of Mayland Cmty. Coll., 955

---

[10]Although § 1447(c) forces defendants to assert that they do not consent to removal within thirty days of the notice of removal's filing in the mine run of cases, there are exceptions. For example, when a notice of removal is filed before every defendant has been served with process, 28 U.S.C. § 1448 permits service on the unserved defendants "in the same manner as in cases originally filed" in federal court, but it also states that "[t]his section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case." 28 U.S.C. § 1448. The Court hypothesizes that § 1448's proviso preserving a defendant's right to remand notwithstanding post-removal service overrides § 1447(c)'s thirty-day time limit, so defendants who are served after a case is removed have thirty days from when they were served, as opposed to when the case was removed, to assert that they do not consent to removal.

F.2d 924, 926-28 (4th Cir. 1992). The United States Court of Appeals for the Sixth Circuit held both that all defendants get a full thirty days to file a notice of removal and that earlier-served defendants could consent to a notice of removal that a later-served defendant files even if the earlier-served defendant could no longer file its own notice of removal. See Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir. 1999).

Congress -- siding with the Sixth Circuit -- adopted specific statutory language to resolve this Court of Appeals split: "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C). That language clarifies that, contrary to Fifth and Fourth Circuit precedents, the thirty-day time limit for a defendant to file a notice of removal does not restrict its ability to consent to removal when another defendant files a timely notice of removal.

American Home's Notice of Consent to Removal thus was timely even though it was filed thirty-seven days after American Home received a copy of the Complaint. Consequently, the Notice of Removal satisfies the statutory requirement that "all defendants who have been properly joined and served must join in or consent to the removal of the action," 28 U.S.C. § 1446(b)(2)(A), so it is not procedurally defective.

## II. IT IS POSSIBLE THAT PADILLA WILL RECOVER FROM THE BROWN DEFENDANTS, SO THEIR JOINDER IS NOT FRAUDULENT.

None of the parties contest that Padilla, Brown Insurance, and Brown are all citizens of New Mexico, or that Padilla and the Brown Defendants are on opposite sides of this case. The Defendants contend, however, that complete diversity still exists, because Brown Insurance and Brown were fraudulently joined. Fraudulent joinder requires either "actual fraud in the pleading of jurisdictional facts" or the "inability of the plaintiff to establish a cause of action against the

non-diverse party in state court." Dutcher v. Matheson, 733 F.3d at 988. For the purposes of the fraudulent joinder analysis, a plaintiff is unable to establish a cause of action if "the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249. See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196, 1231 (D.N.M. 2013)(Browning, J.)(concluding that the Tenth Circuit would likely approve the "additional explanation of the fraudulent joinder standard" in Cuevas v. BAC Home Loans Servicing, LP, because of Dutcher v. Matheson's reliance on that case and "the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases").

The Court faced a set of facts similar to this case in Ullman v. Safeway Ins. Co. In that case, Ullman, the plaintiff, was hurt in a car accident and sued Bailey, the other driver, for negligence and negligence per se. See 995 F. Supp. 2d at 1146. Ullman also asserted a UM claim against the Safeway Insurance Company. See 995 F. Supp. 2d at 1146. The insurance company suggested that the Ullman fraudulently joined the Bailey, because "it is unlikely that Ullman can recover anything from Bailey, because he passed away sometime after the accident" and because it was "virtually impossible" that Ullman would recover damages from Bailey's estate. 995 F. Supp. 2d at 1146. The Court rejected that sort of reasoning:

> When driver A runs his car into driver B, there a possibility that driver B can recover against driver A for negligence. Ullman might not have much success getting any money from Bailey, but she has a legal right to pursue her claim and get a judgment; the fact that she is also pursuing her claims against Safeway Insurance does not change the analysis. Ultimate recovery, insurance, limits, and strategy are interesting, and perhaps relevant to other issues, but in determining whether a defendant is fraudulently joined, the issue is whether Safeway Insurance can demonstrate that "there is no possibility" that Ullman can recover from Bailey, which Safeway Insurance has not done in this case.

Ullman v. Safeway Ins. Co., 995 F. Supp. 2d at 1146.

The Defendants do not allege actual fraud; they argue only that Padilla cannot establish a cause of action against Brown Insurance and Brown. During the motion hearing, Padilla repeatedly asserted that he has stated a claim against Brown Insurance and Brown for breach of contract, and he alleged that Brown promised to obtain full UM coverage for Padilla but then failed to do so. See, e.g., Tr. at 35:2-36:7 (Romero, Court). Padilla's Complaint contains similar -- albeit less specific -- allegations. See Complaint ¶ 50, at 13 ("Defendants, acting through their agents, adjusters, and employees, breached contractual duties owed to Mr. Padilla . . . ."). The Complaint also accuses Brown Insurance and Brown of misrepresenting the policy that they sold to him in violation of the UPA. See Complaint ¶¶ 69, 75, at 21, 23 ("When Defendants . . . sold their policies to Mr. Padilla, they represented to and assured Mr. Padilla that he would be provided the coverages described herein . . . ."). See also Tr. at 43:2-20 (Romero)("And this is in representations . . . during the sale of the policy. And clearly, Mr. Brown and the Brown Agency were the ones directly involved in representations regarding what product Mr. Padilla would receive.").

As the Court observed at the motion hearing, Padilla's claim against Brown Insurance and Brown for breach of contract is not implausible. See Tr. at 45:9-17 (Court). Padilla asserts that he purchased insurance through Brown at Brown Insurance's office after having obtained an insurance quote online, a version of events that even Brown Insurance and Brown admit is reconcilable with GEICO's transaction documentation. See Tr. at 56:10-13 (Court, Frase). If this version of events is accurate, then Brown Insurance and Brown could be liable for breach of contract if they promised to purchase an insurance policy for Padilla in exchange for Padilla's promise to pay money to GEICO and then failed to purchase that insurance policy. Moreover, when evaluating the Defendants' allegations of fraudulent joinder "'all factual and legal issues

must be resolved in favor of the plaintiff.'" Dutcher v. Matheson, 733 F.3d at 988 (quoting

Pampilonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998)). Moreover, there is a factual

dispute regarding where Padilla purchased his policy that a factfinder will need to resolve. The

Court consequently concludes that Padilla may be able to recover from Brown Insurance and

Brown under either the UPA or a breach-of-contract theory, so they were not fraudulently joined.

Accordingly, there is not complete diversity and remand is appropriate.

## III.    THE COURT DOES NOT GRANT PADILLA ATTORNEYS' FEES RELATED TO THE NOTICE OF REMOVAL AND THE MOTION TO REMAND.

Section 1447(c) of Title 28 of the United State Code permits, but does not obligate, the

Court to "require payment of just costs and any actual expenses, including attorney fees, incurred

as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has given district courts

guidance on how to decide whether to award such costs, indicating:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. at 140 (2005). The Tenth Circuit has limited district

courts' discretion to impose costs and fees to those cases in which removal was objectively

unreasonable. See Garret v. Cook, 652 F.3d at 1254 ("[C]ourts may award attorney's fees under

§ 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

removal.").

The Court finds no evidence that GEICO filed the Notice of Removal as a baseless

dilatory tactic. GEICO's electronic transaction documentation and discussions with Brown

Insurance and Brown led it to believe that Padilla purchased his insurance policy online instead

of at their office. From that belief, GEICO reasonably inferred that Padilla had no contact with

Brown Insurance or Brown before his truck's theft.  Consequently, GEICO held a colorable belief that Brown Insurance and Brown had been fraudulently joined such that GEICO could remove this case to federal court.

The Court is keen to follow Congress' intention, as the Supreme Court construed it in <u>Martin v. Franklin Capital Corporation</u>, not to undermine the Defendants' right to remove as a general matter by penalizing GEICO with an award against it for fees in the absence of strong evidence of malicious intent.  The Court therefore declines Padilla's invitation to award him attorney fees and costs related to the Notice of Removal or the related Motion.

**IT IS ORDERED** that: (i) the Plaintiff's Motion to Remand, filed July 13, 2016 (Doc. 9), is granted; (ii) the case is remanded to the Second Judicial District Court, County of Bernalillo, State of New Mexico; and (iii) Plaintiff Christopher Padilla's request -- contained in the Plaintiff's Motion to Remand, filed July 13, 2016 (Doc. 9) -- for an award of attorney's fees and costs related to the Notice of Removal and Motion to Remand is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Thomas A Biscup
Zebrowski Law
Shelby Township, Michigan

-- and --

Geoffrey R. Romero
Law Offices of Geoffrey R. Romero
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Meloney Cargil Perry
Stacy Hemby Thompson
Perry Law P.C.
Dallas, Texas

*Attorneys for Defendant Government Employees Insurance Company*

Megan Day Hill
Civerolo, Gralow & Hill, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant American Modern Home Insurance Company*

John A. Frase
Resnick & Louis, PC
Albuquerque, New Mexico

*Attorneys for Defendants Don Brown Insurance and Properties Inc. and Donald G. Brown*